In both of its supplemental memoranda, ECM focused on the contributory negligence issue, to the exclusion of the first issue cited by the district court. D.E. 1413, 1509. Weaver Cooke did the same. D.E. 1436, 1518. The court will, however, address both of those issues, as well as the related question of proximate cause.
DISCUSSION
The specific damages that Weaver Cooke alleges ECM to have caused are set out in the Barbour Report, wherein Mr. Barbour opines that ECM failed to:
*337 1. Install adequate brick ties;
2. Sufficiently seal and integrate through-wall flashing with other building components;
3. Install adequate mortar netting; and
4. Leave airspace or insert a compressible filler material between bricks and the shelf angles in order to allow for expansion of the brick veneer.
ECM Mem. in Support of Sum. J. at 4-5 (D.E. 686) ("ECM Mem."). In addition, Mr. Barbour faulted ECM for allegedly installing brick veneer where shelf angles were missing.[5] Weaver Cooke Mem. in Response to ECM Mot. for Sum. J. at 6-7 (D.E. 754) ("Weaver Cooke Response"). According to Weaver Cooke,
the issues with the through-wall flashing and mortar netting are related to water intrusion. The failure to install all of the brick ties, the failure to leave airspace or insert compressible filler, and ECM's installation of brick veneer where shelf angles were missing are structural in nature and have nothing to do with water intrusion.
Id. at 7.
Before the court now are issues raised in ECM's initial motion for summary judgment, and noted by the district court as remaining unresolved and therefore potentially viable on remand: First, whether, under the specific terms of the subcontract , Weaver Cooke is entitled to seek indemnity from ECM for injury or damage to ECM's own work; specifically, the masonry work. For the reasons set out below, the court will enter summary judgment for ECM on this ground. To the extent that Weaver Cooke theoretically could still pursue its contractual indemnity claim for water intrusion damages outside the scope of ECM's work, the court will enter summary judgment for ECM on the alternative ground originally raised in ECM's summary judgment motion, which is that Weaver Cooke failed to establish the element of proximate cause. Finally, the district court observed that the question of whether ECM and Weaver Cooke are in pari delicto -i.e., whether Weaver Cooke was contributorily negligent with respect to the specific damages at issue vis-a-vis ECM-also remained open for disposition. Because the contractually indemnity claim is fully resolved by the court's conclusions as set out below, the court need not, and does not, consider the issue of contributory negligence.
1. Indemnity Agreement Excludes Damages to the Subject of the Contract
The district court pointed out in its order that this court had not yet addressed ECM's argument, set out in its original motion for summary judgment, that "even if Weaver Cooke's own failure to properly supervise ECM's work does not completely preclude it from receiving indemnity, the damages for which it is entitled to indemnity are limited by the terms of the subcontract." D.E. 1328 at 1 n.1; see also ECM Mem. (D.E. 686) at 32. The language to which the district court and ECM refer provides as follows:
*338 16.2 To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Contractor, its agents and employees from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from Subcontractor's performance of Subcontractor's Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than Subcontractor's Work itself ) including loss of use resulting therefrom, if caused in whole or in part by the negligent acts or omissions of Subcontractor, a sub-subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity, which would otherwise exist as to a party or person described in this Article.
D.E. 686, Ex. 1, ¶ 16.2 (emphasis added). The subcontract between Weaver Cooke and ECM defines the "Subcontractor's Work" in Attachment A-1 to their subcontract, as follows: "Work includes furnishing and installing brick, concrete masonry units, cavity insulation, joint reinforcing, wall ties, grout, thru-wall flashing, pre-formed control joints, dove tail anchors, mortar stop, dampproofing, clean up, mortar, sand, supervision, labor, equipment, and taxes." D.E. 686-1, at 4.
It is evident that ECM's unique fact set is such that there are two separate "kinds" of possible damages-those allegedly caused by leaking water, and, those damages Weaver Cooke attributes purely to the brickwork not being properly done, per the expert reports upon which Weaver Cooke relies. Here, it is abundantly clear that only "the issues with the through-wall flashing and mortar netting are related to water intrusion." Weaver Cooke Response at 7. The remainder "are structural in nature and have nothing to do with water intrusion." Id. It is readily apparent that the alleged "structural" damages come squarely within the scope of ECM's "Work" and, for that reason, they are specifically and wholly excluded from the scope of damages for which Weaver Cooke may endeavor to seek indemnification.
Moreover, with respect to these remaining potential damages in connection with thru-wall flashing and mortar netting, notwithstanding Weaver Cooke's contention that there are defects in these construction elements that are in some way "related to water intrusion," that position in no way changes the fact that thru-wall flashing and mortar netting also are specifically and wholly within ECM's scope of work. Again, per the language of its own subcontract, Weaver Cooke may seek indemnity for those damages "arising out of or resulting from Subcontractor's performance of Subcontractor's Work, provided that such claim, damage, loss or expense is attributable to ... injury to or destruction of tangible property (other than Subcontractor's Work itself). " D.E. 686, Ex. 1, ¶ 16.2 (emphasis added). To the extent that Weaver Cooke seeks damages based on alleged injury to these components , that recovery is precluded by the language just discussed. In contrast, to the extent that Weaver Cooke seeks to argue that deficiencies in ECM's installation of the thru-wall flashing and mortar netting ultimately caused water intrusion damages to the SkySail Project-i.e., damages to tangible property other than ECM's "Work itself"-then that argument would be viable, in theory. In practice, however, for the reasons set out below, that argument is *339 precluded by Weaver Cooke's failure to satisfy its burden on proximate cause.
2. Lack of Proximate Cause
In its original motion for summary judgment, ECM argued that Weaver Cooke's "catch-all inclusion of whatever defects and damage plaintiff or any experts may assert" rests on the Barbour Report and Sutton-Kennerly & Associates reports, which "identify only alleged defects in ECM's work and the potential that water damage to the SkySail [Project] might have resulted from such defects." D.E. 686 (ECM Mem in Supp. of Sum. J.) at 11. The "proximate cause argument also relates to the remanded indemnity issue because § 22B-1 is a negligence-based statute, such that traditional negligence analyses apply." Stock Indemnity Remand Order (D.E. 1406) at 9. Under the language of the contractual indemnity provision as discussed above, the only damages potentially recoverable by Weaver Cooke would be those caused by, but outside the scope of, ECM's "Work"-i.e., water intrusion damages.
In its memorandum, ECM noted that "[w]hen asked in discovery what such injuries were proximately caused by ECM's negligence , Weaver Cooke Pointed to only the four defects in ECM's work alleged by Mr. Barbour and the potential of damage to SkySail." ECM Mem. (D.E. 686) at 10 (emphasis added). Specifically, in response to ECM's interrogatories asking Weaver Cooke to "describe with specificity the basis of Weaver Cooke's determination [that] the alleged problems, defects or issues, were caused by ECM," Weaver Cooke replied:
ANSWER
See Plaintiff's expert reports and the report of Sutton-Kennerly & Associates provided to counsel for ECM which address the condition of the brick masonry work on the project. Among the conditions identified in the reports which Weaver Cooke currently believes fall within ECM's scope of work include, but are not limited to, the following conditions: (1) improper brick tie installation; (2) lack of a soft joint (i.e. horizontal expansion joint) below steel shelf angles; (3) lack of mastic applied to laps and terminations in self-adhered flashing membrane; and (4) improper installation of mortar nets. Weaver Cooke has denied liability to Plaintiff for those and any other conditions, However, to the extent that Weaver Cooke is found liable to Plaintiff for any conditions which pertain or relate to or arise out of work which ECM performed or failed to perform, then Weaver Cooke contends that ECM is liable to Weaver Cooke for all losses, costs and damages incurred or to be incurred by Weaver Cooke as a proximate result thereof, pursuant to the Second Third Party Complaint against ECM.
Id. On that basis, ECM maintained that Weaver Cooke failed to make a sufficient showing of proximate cause.
Weaver Cooke's memorandum in response to ECM's motion for summary judgment provides, in relevant part, as follows:
14. At various times between early 2010 and early 2012, [Stock Supply] and Jeld-Wen visited Skysail, inspecting the exterior windows and glass doors, performing water testing, and making repairs in the area of doors. During this time, they led Weaver Cooke to believe that the water intrusion issues occurring in the fourth floor units was [sic] primarily caused by the defects in the transoms above the doors....
15. At no time did [Stock Supply] or Jeld-Wen advise Weaver Cooke that there were any other problems or a risk *340 of water intrusion throughout all four floors of the entire SkySail project. Furthermore, none of these water intrusion issues provided any indication that there was potential for structural issues at SkySail within the building envelope caused by ECM's latent defects, the absence of brick ties, the failure to leave airspace or insert compressible filler, and the placement of brick veneer in locations where shelf angles were omitted....
16. It was not until March 2012 that Weaver Cooke became aware that such an extensive water intrusion problem did potentially exist at Skysail [sic] that could involve other subcontractors' scopes of work such as ECM in addition to [Stock Supply]. Weaver Cooke became aware of this when it was provided a copy of the report of NBRD's expert, George Barbour ....
17. It was also not until March 2012 that Weaver Cooke became aware of the potential for structural issues at Skysail [sic] within the building envelope caused by the absence of brick ties, the failure to leave airspace or insert compressible filler, and installation of brick veneer in locations where shelf angles were omitted. Weaver Cooke certainly was not put on notice of these structural issues by the water intrusion issues occurring prior to March 2012....
18. If, for some reason, it is found that the water intrusion problems throughout the entirety of SkySail were not apparent, or reasonably ought to have become apparent to Weaver Cooke in March 2012, then the earliest Weaver Cooke could have reasonably discovered the numerous latent defects leading to the water intrusion caused by multiple subcontractors, including ECM, would have been May 6, 2010, the date of NBRD's First Amended Complaint, in which NBRD claimed Weaver Cooke breached the contract by "failing to properly construct the Project buildings in a manner preventing water intrusion, which is causing damage and the potential for significant mold problems in the residential units as well as the common areas." Doc. No. 15 ¶ 150(l) ]
D.E. 754 at 8-9 (citations to Estes and Connor affidavits omitted). Addressing the question of proximate cause, Weaver Cooke responded that "there is a genuine dispute of material fact pertaining to causation" in that
ECM argues that it was not simply Weaver Cooke's failure to supervise ECM that caused problems on the project but also Weaver Cooke's failure to supervise the work of other subcontractors on the project. The interrelation between these various subcontractors and their scopes of work and whether failure to supervise one subcontractor was the proximate cause of damage to another subcontractor's work is inappropriate for summary adjudication as it requires resolution of a variety of factual issues.
Id. at 21; see also Weaver Cooke Response to ECM Mem. in Response to [Stock Indemnity Remand Order] (D.E. 1436) at 10-11 (citing this paragraph in response to the court's request to bring forward the bases upon which the analyses contained in the Stock Indemnity Remand Order do, or do not, pertain as to Weaver Cooke v. ECM).
The court has not ruled on this question in the Weaver Cooke-ECM context, though, to be sure, the parties should be expecting it. Weaver Cooke maintained in its first supplemental memoranda to the court that there remains a "genuine issue of material fact pertaining to causation, the second element needed to establish contributory negligence." D.E. 1436 at 10. As Weaver Cooke knows, causation also is a *341 required element of establishing negligence per the plain language of its contractual indemnity provision. See, e.g. , Stock Indemnity Remand Order at 20-21. So, while Weaver Cooke has opined that "the only issues available to ECM on remand are those specifically identified by the District Court in its order," it did not share the basis for that conclusion, and, in any event, the court disagrees.
In establishing the elements of negligence, made necessary here by the contractual indemnity provision requiring such a showing, the burden in the summary judgment context was and is on Weaver Cooke as the proponent of its claim to put forth admissible, relevant evidence sufficient to establish the existence of genuine issues of material fact as to whether the acts or omissions it attributes to ECM proximately caused the water-related damages of which it now complains.[6] Again, it comes down to the Barbour Report and the report of Sutton-Kennerly & Associates. In its original motion for summary judgment, ECM articulated the proximate cause argument but did not aggressively pursue it, choosing to focus on other defensive theories; it did, however, manage to shift the burden to Weaver Cooke. Further, this question subsequently was addressed in exhaustive detail during the hearing held on July 19, 2017; was discussed in the Indemnity Remand Order; and, finally, gave rise to the court's request of the parties to articulate the extent to which the matters addressed in the hearing and orders pertained to them. There is simply no way around it. In sum, Weaver Cooke was acutely aware of its need to bring forward evidence responsive to ECM's proximate cause argument.
Unfortunately, Weaver Cooke didn't address the matter with specificity in its initial memorandum in response to ECM's motion for summary judgment, and also failed to address it in either of its two supplemental responses, other than to contend that "the only issues available to ECM on remand are those specifically identified by the District Court." D.E. 1436 at 6. The Barbour testimony appended by Weaver Cooke to its responsive memoranda does not speak to whether any of the flaws Mr. Barbour perceived in ECM's work caused actual water intrusion and/or actual water damage. Weaver Cooke has not cited to this court any specific language from the Barbour Report, or the Sutton-Kennerly & Associates report, that could support this crucial factor in Weaver Cooke's claim.[7] In a nutshell, this court has no basis upon which it could now conclude that Weaver Cooke has proffered, in either the Barbour Report and/or the Sutton-Kennerly & Associates report, relevant and admissible evidence sufficient to meet its burden of showing that some aspect of ECM's installation of the thru-wall flashing or mortar netting proximately caused any kind of water damage to the SkySail project. With no showing of proximate cause, the negligence required to invoke the indemnity clause also is lacking, and summary judgment is appropriate for ECM on this claim.
CONCLUSION
For the foregoing reasons, the court on remand concludes that ECM's motion for *342 summary judgment on the contractual indemnity claim is ALLOWED with respect to Weaver Cooke's claim for damages relating to "the Work" performed by ECM, that being the masonry work as defined within the parties' subcontract and the attachments thereto, any damages sought by Weaver Cooke are excepted from recovery in indemnity. Further, with respect to Weaver Cooke's claim for any water intrusion damages resulting from ECM's allegedly negligent performance of its work resulting in damages to other tangible property at SkySail, the motion is ALLOWED on grounds that Weaver Cooke has failed to satisfy its burden of showing proximate cause.
SO ORDERED.

Weaver Cooke subcontracted with third-party defendant Randolph Stair and Rail Co. ("Randolph Stair") to install the shelf angles. As has previously been noted,
[s]helf angles are steel angles that resemble the shape of a capital 'L' and are attached to a building's floor slabs and integrated into the brick veneer to provide both support for the load of brick veneer and to allow for a gap, or space, between the building and the brick veneer.
Order [Denying] Summary Judgment Regarding Statute of Limitations Defense Asserted by Randolph Stair and Rail Co. at 7 (August 27, 2014) (D.E. 905).

"This proximate cause argument also relates to the remanded indemnity issue because 22B-1 is a negligence-based statute, such that traditional negligence analyses apply." Stock Indemnity Remand Order at 9.

For that reason, there is no basis upon which this court should undertake its inherent obligation as "gatekeeper" to analyze, under Rule 702 of the Federal Rules of Evidence, whether either of these reports is helpful or relevant with respect to resolution of the dispute as between Weaver Cooke and ECM.